UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KAREL HOLTEN,                                              Case No. 25-CV-1043 (PJS/ECW)

          Plaintiff,

v.                                                                                    ORDER

TRANSAMERICA LIFE INSURANCE
COMPANY,

          Defendant.

      Elizabeth I. Wrobel and Mark A. Smith, WROBEL & SMITH, PLLP, for plaintiff.

      Eric F. Au and Joelle Groshek, FAEGRE DRINKER BIDDLE & REATH LLP, for defendant.

      Plaintiff Karel Holten brought this coverage action against defendant Transamerica Life Insurance Company ("Transamerica"), seeking payment of benefits under a long-term-care insurance policy (the "Policy").  This matter is before the Court on Transamerica's motion for judgment on the pleadings.  ECF No. 27.  For the reasons stated on the record at the September 17, 2025, hearing and briefly summarized below, the Court finds that the Policy is facially ambiguous and therefore denies Transamerica's motion.

I.   BACKGROUND

In 1996, Holten's husband purchased the Policy from Transamerica's predecessor-in-interest.  Compl. ¶ 6, ECF No. 1-1.  After Holten's husband passed away in 2012, Holten became the named insured under the Policy.  Id. ¶ 9.  In June 2024, Holten became unable to care for herself because of dementia, and she moved into an assisted-living facility with dementia care.  Id. ¶¶ 12–14.  Three months later, she moved to a different such facility.  Id. ¶ 26.

The Policy's benefits are not payable unless the "care or services" that Holten receives are "provided in a Long-Term Care Facility."  Wunderlich Decl., Ex. A, ECF No. 30 at 28–29.[1]  The parties dispute whether the two assisted-living facilities with dementia care in which Holten has lived are "Long-Term Care Facilit[ies]" for purposes of the Policy.

In relevant part, the Policy defines a Long-Term Care Facility as:

> A facility, or that part of one, which:
>
> (1)   is operating as a nursing home under a license issued by the appropriate licensing agency; or
>
> (2)   is both licensed as a boarding care home and certified as an intermediate care facility for the purposes of the medical assistance program[.]

---

[1]When citing documents by ECF number, the Court cites to the electronically generated page numbers at the top of the page.

*Id.* at 27.  The Policy does not define the term "nursing home."

Holten interprets the Policy as requiring a facility to operate (1) as a nursing home (as a reasonable insured would understand the term "nursing home") and (2) under *a* license (not necessarily a *nursing-home* license) issued by a licensing agency. *See* Pl.'s Mem., ECF No. 33 at 5–15.  Holten argues that, under this definition, she is entitled to benefits, as reasonable insureds would consider her assisted-living facilities with dementia care to be "nursing homes," and as those facilities were licensed by the State of Minnesota (albeit not as nursing homes).  *See id.* at 11–15.

Transamerica, by contrast, interprets the Policy as limiting coverage to care provided by facilities that have been *licensed as nursing homes* under Minnesota law.  *See* Def.'s Mem., ECF No. 29 at 7–11.  There is no dispute that the two facilities in which Holten has lived are not licensed as nursing homes, but instead are licensed as assisted-living facilities with dementia care.

## II.  ANALYSIS

Under Minnesota law,[2] insurance policies are construed objectively—that is, "according to what a reasonable person in the position of the insured would have understood the words to mean rather than what the insurer intended the language to

---

[2]The parties appear to agree that "[b]ecause this case is in federal court based on diversity jurisdiction, Minnesota's substantive law controls [the Court's] analysis of the insurance policy."  *Corn Plus Coop. v. Cont'l Cas. Co.*, 516 F.3d 674, 678 (8th Cir. 2008); *see also* ECF No. 29 at 8; ECF No. 33 at 5–6.

mean." *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977) (citation omitted). Determining whether a contract is ambiguous is "a question of law for the court." *Staffing Specifix Inc. v. Tempworks Mgmt. Servs.*, 913 N.W.2d 687, 692 (Minn. 2018). For the reasons described at the hearing, the Court finds that the phrase "operating as a nursing home under a license issued by the appropriate licensing agency" is ambiguous because it is "susceptible to more than one reasonable interpretation." *Id.* Both Holten's interpretation and Transamerica's interpretation are reasonable.

Although a court "generally do[es] not rely on extrinsic evidence to *establish* contractual ambiguity," *Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 784 (Minn. 2016), once a court finds that a contract is ambiguous, that ambiguity is "resolved by admitting extrinsic evidence of 'the facts and circumstances surrounding the transaction' to reveal the parties' intent," *Windcliff Ass'n, Inc. v. Breyfogle*, 988 N.W.2d 911, 918 (Minn. 2023) (quoting *Donnay v. Boulware*, 144 N.W.2d 711, 715 (Minn. 1966)). At that point, "construction of the contract is a question of fact for the jury"—except, if the extrinsic evidence is "conclusive," a court can determine the contract's meaning as a matter of law. *Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 369 (Minn. 2005); *see also Gelhaus v. Fingerhut Cos.*, No. C5-01-1711, 2002 WL 857835, at *3 (Minn. Ct. App. May 7, 2002) ("[W]hen extrinsic evidence renders an arguably ambiguous contract term

clear, the construction of the language is for the court."). "[T]he rule of strict construction against a contract's drafter (that is, *contra proferentem*), should be applied 'only *after* an attempt is made to determine the parties' intent behind an ambiguous term, using extrinsic evidence if available.'" *Windcliff Ass'n*, 988 N.W.2d at 919 (quoting *Staffing Specifix*, 913 N.W.2d at 694).

In this case, extrinsic evidence could clarify the meaning of "operating as a nursing home under a license issued by the appropriate licensing agency." Such evidence might include evidence about whether Transamerica used this language in long-term-care policies issued nationwide or whether the language was instead specifically tailored to Minnesota's regulatory scheme. Such evidence might also include evidence regarding Transamerica's use of optional endorsements or riders providing explicit coverage for assisted-living facilities. *See Transamerica Life Ins. Co. v. Slee*, No. 2:19-CV-1536-JLR-DWC, 2020 WL 7872067, at *2 (W.D. Wash. Dec. 11, 2020), *report and recommendation adopted by* 2021 WL 22614 (W.D. Wash. Jan. 4, 2021) (noting that the plaintiff "had declined to purchase an optional Home Health and Community Care Rider (HHCC Rider), which included benefits for stays at Assisted Living Facilities (ALFs)").

Because the Policy's language is facially ambiguous, its meaning cannot be resolved on the pleadings, so Transamerica's motion must be denied. Transamerica

may renew its arguments about the meaning of the Policy on a motion for summary judgment after discovery is concluded and all non-dispositive motions are resolved.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion for judgment on the pleadings [ECF No. 27] is DENIED.

Dated:  September 26, 2025

/s/ Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court